Good morning. Our first case today is 2013-1343, Calypso Wireless v. T-Mobile. Mr. Juran, you may proceed. Thank you, Your Honor. Good morning. Calypso's patent claims systems and methods for automatically switching a cell phone's line of communication back and forth between a cellular network and an Internet access point such as a Wi-Fi router. The auto-switching is determined in part by whether or not the cell phone is within or outside the range of the Wi-Fi router signal. T-Mobile uses this very technology and brands it as Wi-Fi calling. The district court, however, took a completely different viewpoint of what this patent actually covers. Can I ask, in what real world example could switching ever not in some indirect way be dependent on distance? I mean, for example, switching couldn't occur if you were 10,000 miles from something and it might occur if you were... That is correct. So how could the claim element at issue here, combination but mostly the pre-established one, have a meaning that would be met by some indirect dependency on distance which appears to be universal? It would be met, Your Honor, and that's part of the district court's error is that he took the word comprising, the predetermined parameters comprising a pre-established vicinity range. So he took the predetermined parameter and changed comprising to be is. So instead of allowing that distance to be part of a metric for the predetermined parameter to satisfy, he said that no, the distance had to be a predetermined parameter. And from that, he went in farther and said that the distance had to be measured or known by the cell phone in order to allow that switching to occur. Do you agree that predetermined and pre-established are used interchangeably in the patent? No. They are two distinct terms. There's predetermined parameters and there's pre-established vicinity range. The specification also uses the terms together in some context but they maintain that distinction that there's a predetermined part which is ahead of time and then the pre-established and that's the selecting ahead of time. So there's a distinction there between the claims language and the court just went back and forth and exchanged those two terms. And it's most evident in claims 11 and 15. 11 through 15 do not even use the word predetermined or predetermined parameters. But the district court's construction injects that language into pre-established vicinity range as a predetermined maximum distance. So the district court is just swapping these terms back and forth between the claims. Well, if we're to agree with you that it simply is when you reach the maximum distance, how can it be predetermined in every instance? Because that would vary greatly, would it not? Well, the range can vary in different embodiments of the invention. But the predetermined portion, those are the decision of which parameters you're going to look at to enable that switching. You pre-establish the vicinity range as in the preferred embodiment, which was specifically excluded by the district court, which allows for choosing a particular transmission technology as the short-range communication standard upon which the system will operate, such as selecting a Bluetooth standard or a Wi-Fi standard.  And the district court just said, no, I'm not going to allow that preferred embodiment to be able to satisfy. Can you indicate where in the specification it indicates that selection of the technology without more, without any further specification of 100 meters or anything else, is intended to be an embodiment? Yes, at page 6 of the appendix at column 6, lines 48 through 51, the patent describes that one of the predetermined parameters, which may be established based at least in part on the short-range frequency standard on which the transceiver assembly operates, could be a pre-established vicinity range. So that part of the language there allows for the selection of the short-range communication standard to satisfy how that language is pre-established for the vicinity range. I'm sorry, look at the very next sentence, though. It says that more specifically, the pre-established vicinity range may be currently defined as about 100 meters. However, it's emphasized that the actual vicinity range incorporated in the present invention may vary greatly and is not limited to the indicated 100 meters. So doesn't that then bring you back to the notion that it is a pre-established geographic limit that we're talking about? Yes, in part. The different short-range communication standards have maximum distances at which they can operate. And the embodiment of the 923 patent, the cellular phone has to be within those maximum distances. I could refer the court to T-Mobile's own specification documents where they describe certain Wi-Fi protocols that should be incorporated into their cell phones and routers. And they have limits in there of how much maximum distances these ranges need to be for certain power levels or for certain signal quality parameters. And so distance is a component to these different Wi-Fi standards, Bluetooth standards. But the cell phones have to be within or outside that distance. At no point in the 923 patent does it discuss measuring a distance  between these networks. And so the district court took all these errors. He compounded these continuing errors of the requirement that the phones must know their distance from the Wi-Fi router, then the exclusion of the preferred embodiment of selecting the particular short-range communication standard the system will operate in. There's also the substitution, as we've already discussed, of predetermined and injecting that into pre-established vicinity range. And that affects claims that never even use the term predetermined or predetermined. I guess one thing I don't understand is how does signal strength, which is what I understand the accused device uses to determine switching, signal strength, which is measured only in decibels. I've read all the expert testimony. How does that include a maximum distance as part of its analysis on when to switch? How does it include, if I give comprising the meaning you want it to, a pre-established vicinity range? Signal strength is when you hit a certain decibel point, boom, we're going to switch. How does that include distance at all? The signal strength will include distance as part of that metric because as you get farther away from the Wi-Fi router, your signal is going to degrade the farther out you get. So it's correlated, certainly. Yes. But it doesn't include it. How does it include it? Well, it's included as part of the inherent property of the signals in these systems, Your Honor. It's included as the inherent. So when you get further away, the signal strength goes down, but it is the number of decibels, right? It doesn't care about distance. The number of decibels is an independent variable. It just so happens when you get further away, the decibels are going to go down. Likewise, if there's a giant mountain in front of you, the decibels are going to go down. Likewise, if there's a lot of stress put on the frequency because a lot of signal use and a lot of noise around you simultaneously with other signals, your signal strength is going to go down. So there are lots and lots of different things that could impact the number of decibels. Yes. It could impact the decibels, but it is the number of decibels itself that is controlling the switching, not the distance, not any of those other things, right? That is correct. The decibels can change depending on whether there's a wall or a mountain, other interference. But distance is still a factor in what kind of decibels you'll receive at a certain distance away from that Wi-Fi router. And the district court, during claim construction, looked at some of the specification which talked about being able to transmit through walls and disregarded that language, saying it needs to be at distance. And that's not correct. Distance is a part of the system, but the system and claims are directed to simply whether the phone is within or outside the range of those Wi-Fi routers. Well, that's your claim construction argument. But if we don't agree with you on your claim construction argument, I guess what I'm trying to focus on is suppose I agree with you on the word comprising means including. Yes. But not on the rest of your argument. Suppose that's where I am hypothetically. Then what I'm trying to figure out is does the parameter of signal strength include a pre-established vicinity range or not? And that's where I'm hoping you'll help me out. And why it does. It does include it because it's not just signal strength. There could be signal integrity, signal-to-noise ratio, and all of those do include and incorporate distance as part of how powerful that signal will be or the integrity of that signal. And you said they include it. There is no algorithm by which switching is determined that has one of its variables as distance, for example. It's just purely a measure of decibels, right? Correct. And you're just saying the measure of decibels is affected by how far away you are, how much noise there is, how many walls there are between you, how many other signals competing, all of that. If you use the signal strength as a predetermined parameter as part of the system to do the switching, the farther you are away from the Wi-Fi router, the worse your signal will be, the closer you get. But this says, so if I leave intact, pre-established vicinity range is maximum distance. That's what the district court held. Yes. Okay. How is the maximum distance incorporated in to a determination of when to switch based on signal strength? That will be incorporated into the decision to switch because you can pre-establish that vicinity range by selecting which Wi-Fi protocol or Bluetooth protocol which have maximum distances within their specifications such as 10 meters for Bluetooth, about 100 meters for Wi-Fi, and those are the maximum distances that these devices will operate according to the manufacturer's specifications and T-Mobile's own specifications. So the devices will have to switch within that maximum distance that is defined ahead of time by the manufacturer. But that's the whole thing. It's within that distance, not at a pre-established distance. That's the difference. You want to modify it. Instead of using the maximum distance, you want everything short of the maximum distance. Well, even at the maximum distance, you may not have the other parameters satisfied within the claims, so you will need to allow for up to the maximum. These devices operate up to a maximum, but you may switch at that maximum if you have a really good signal or further in, closer to the Wi-Fi router if the signal quality is less. And so that all incorporates this distance, and the district court took that and modified it to where the device has to measure a specific actual distance and then switch based on that measured or known distance when at no point in the 923 patent is a distance known by the device or is knowledge required to do that switching, simply whether it's inside or outside. You're into your rebuttal time. Would you like to save the remainder? One more quick point. Figure 2 is instructive of how these devices switch back and forth, and it goes to demonstrate the district court's error that knowledge is not a part of the 923 claims. If you follow through Figure 2, and it's also described at column 7, line 42 through column 8, line 42, it merely talks about trying to find a signal from a Wi-Fi router, and if it can't find one there, it tries to find one on the cellular network, and if it can't find one there, it starts the algorithm over. So this particular flowchart prefers a Wi-Fi signal, but if it can't find one, it tries to go on to the cellular, and it just does that polling back and forth again and again, and no point in this flowchart is it known or measured what the actual distance is. And I will reserve the rest of my time for rebuttal. Thank you. Mr. Krevitz? Thank you, Judge Moore, and may it please the court. If I may, I'd like to start with the last question that the court asked. It was your question, Judge Moore, and it goes to the heart of why Calypso's claim construction and summary judgment arguments cannot hold up, and that is you asked about whether distance is ever used in the switching decision. There is no dispute in the record, none whatsoever, that distance is not used in the switching decision, and there's an important point that got lost, Your Honor, in the discussion with Mr. Juren that I want to point out, and it goes to a question Judge Toronto asked as well, and that is if distance is always a factor, if it is always considered in some way, if it correlates in some way, as you said, Judge Moore, then what does this element add? And that's a significant point because this element, the pre-established vicinity range, was added in prosecution to overcome prior art all of the claims that did not have this term were rejected and were allowed only when this term was added. And the reason they were rejected is because of the Forslow reference. The Forslow reference had quality of service, which was used to determine which network, packet switch or circuit switch, to use. The continuation in part, which is discussed in the briefs, is even clearer on this question. In the continuation in part... Quality of service includes or refers to at least signal strength. Your Honor, in Forslow, the reference discusses decision-making criteria including quality of service parameters, which include, and this is a quote, peak bit rate, bucket depth, maximum buffering requirement for the flow, and per packet delay. That's at column 10, lines 2 through 14. It does not use the term explicitly signal strength. That comes in, Your Honor, in the patentee's discussion and distinction of the AHO reference during the continuation in part. The AHO reference could not be closer in terms of prior art. It was, incidentally, prior art to the original application as well. The AHO reference talked about switching between a Wi-Fi network and a cellular network and does so explicitly based on signal strength. In fact, it talks about being close to the Wi-Fi router and having a sufficiently good signal so you use the Wi-Fi router. Then you move outside and you switch to the cellular network. In distinguishing the AHO reference, the patentee said that the AHO reference switched based on signal strength. The AHO reference switched based on signal integrity. We add pre-established vicinity range. We add the requirement that there be this vicinity range as a parameter used for the switching decision. The examiner came back and said, well, I think AHO has GPS, so AHO also has a pre-established vicinity range. The patentee explicitly distinguished the AHO reference saying that in AHO, GPS was used simply to determine the absolute location of the wireless device, not used for switching. For switching, the AHO reference used signal strength. It's important to understand, whatever this term means, we know it cannot be based simply on signal strength for several reasons. One, as Your Honor pointed out, Judge Toronto, early on, signal strength is an element in any system, and distance is relevant in any system relating to signal strength. The farther you go, as a general matter, the less strong the signal. But if that's true, and it is, and Mr. Juren admitted it, of any system, then this element, pre-established vicinity range, which again was added during prosecution to overcome prior art into every single claim, means nothing. It wouldn't necessarily be true that any switching system depends on distance. You could have one that is based on variable cell phone provider pricing at different times of the day. Absolutely, Judge Toronto. If there's peak pricing during business day, don't use it. I may have been imprecise. What I meant to say, Judge Toronto, is this. Any system that, any claim, excuse me, that was construed in the manner in which Calypso suggests that the pre-established vicinity range is simply a range in which you can switch, which is what their construction means. The pre-established vicinity range is a range in which you can switch. If that were the case, then the last element of the claim, of Claim 1, for example, again added during prosecution, would be meaningless. You cannot switch in any system, including the one that you just posited, Judge Toronto, if you cannot switch. If you are not in a range in which you can switch, then by definition you cannot switch. So adding an element or construing the last element as Calypso suggests to simply be any range in which communication is possible would add nothing. You could never get through elements A through E of Claim 1, for example, and not satisfy Claim Element F if all that Claim Element F meant was you have a pre-established vicinity range, which is any area in which you can switch. You could never have an auto-switching system in which you switched if you weren't able to switch, and that's simply how Calypso is suggesting the claim be construed. And if I may just address, make sure that I hit all of the points, and of course I want to make sure I address any questions that the Court has. Judge O'Malley, you asked if the patent draws a distinction between predetermined and pre-established, and Calypso counsel told you that it does. In fact, it doesn't. In the abstract of the patent, it uses predetermined vicinity range, uses the terms interchangeably, it does so elsewhere as well. At Column 3, Line 13 to 21, for example, in talking about the vicinity range and drawing no distinction between a predetermined and a pre-established vicinity range, at Column 3, Line 13 to 21, it refers to a predetermined vicinity range, not a pre-established vicinity range. Judge Moore, you asked a question about signal strength, and Mr. Duren said it is an inherent property of signals. Generally, the distance will be relevant, and again, we submit that's exactly why their proposed claim construction cannot make sense, because if all we're talking about is an inherent property of signals, then obviously distance isn't used to determine whether or not you switch. And this is a point that I... Well, you say used to determine, but part of the problem is, I mean, look, he's right about comprising. It is a well-defined term, so why don't you tell me whether it includes it, not whether it uses it, because I'm not sure that even if we change that claim construction, the outcome is any different, and that's what I want you to address. But certainly you understand that comprising is a well-defined term, and it ought to be given its well-defined meaning, which is including, rather than uses. I'm not sure it makes a difference, but certainly that is true. Let me address that, if I may, Judge Moore, in several ways. First, the patent repeatedly refers to a pre-established vicinity range being a parameter. Yes, but that's not what the claim refers to. I understand, Your Honor, and Calypso's own expert in his expert declaration submitted in connection with the summary judgment motion also said that a pre-established parameter is a pre-established vicinity range. But let me address the question that Your Honor is asking. Again, that's not relevant to my question. Well, it's relevant insofar as that's how Calypso has... Is that an expert or a patent lawyer? No, Your Honor. Are you a patent lawyer? Yes, Your Honor. Okay, what does the word comprising mean? I'm a patent lawyer. It means it's an open-ended term, and let me address... No, what does it mean? It means that it can include and have other elements as well. No, it can include or it has to include and have other elements as well. It has, oh yes, certainly. It has to include and may also have other elements. But it does not make a difference. I'm not sure what the expert said about the word comprising. He's not a patent lawyer, and this has a normal meaning to patent lawyers. I understand. I was simply pointing out it's an admission made by Calypso that's contrary to an argument being made under the appeal. It's not an admission. It's a factual statement by an expert who wasn't qualified to give testimony on a legal term. Go ahead. The answer, Your Honor, is it doesn't matter in any event. That was what I was hoping you were going to say. And here's why. Let's get to that. And here's why. Calypso has been using shorthand, Your Honor, in the brief and today, maximum distance. The claim construction is not maximum distance. The claim construction is maximum distance between the handset and the router. It has to measure that distance, not the maximum distance of a signal, not the maximum distance that may be generated by certain power levels of a router. It has to measure the maximum distance between the wireless device and the router. That measurement is never used. Not only is it not a parameter, it's not an input to a parameter. It's not considered as a parameter. T-Mobile's devices are incapable of doing that measurement as configured to the accused products. It doesn't mean that they couldn't be designed to operate in that manner, but they do not. There is no dispute on that question. So even if we submit this is a red herring as to its impact for infringement, even if the pre-established vicinity range were an input to a parameter, even if it were simply one of many things that added up to a parameter, you still would have to satisfy it, of course. It is a claim element added during prosecution. And the claim element, as construed by the district court, is a maximum distance between the wireless device and the router, and that is never measured, much less used. If the predetermined parameter were a variable, which took into account noise, signal strength, and distance, and then inputted a number to identify switching, perhaps this would be a different case. Yes, Your Honor. With one slight refinement, distance between the wireless device and the router, yes. It's not some random distance, not distance in our documents that talk about how far in testing conditions a signal may go. But yes, Your Honor, I agree completely that if a parameter included many inputs, signal strength, signal integrity, for example, as well as a determination of the distance between the handset and the router, then that could be consistent with the understanding of comprising that could establish the disclaimer. But that's not what we have here. But we do not have that here because, again, there is no dispute in the record, and this is very important on the summary judgment. There are actually no factual disputes at all as to how the system operates, and there is no allegation, none. In fact, there's an admission to the contrary that T-Mobile's devices measure that distance between the wireless device and the router. So it is not only not itself a parameter set in advance, it is not an input to a parameter. It cannot be an input to a parameter because the information does not exist and the devices are incapable of determining it. What is your response to your friend on the other side when he says that if, in fact, we read the claim the way that the trial court did, that we're actually reading out a preferred embodiment? It's wrong. We're not reading out a preferred embodiment at all. The preferred embodiments talk about using certain technology, Bluetooth technology, for example, and mention the fact that currently certain technologies have certain limits. That would be an input, one assumes, into how one thinks about designing a system. What should that distance be between the device and the wireless router, for example? But there is no embodiment whatsoever that says that distance is irrelevant. In fact, the Figure 1 has a picture, as your Honor may recall, in which it identifies a specific distance in yards, referred to as the PicoNet. During the briefing, Calypso said that that is not a pre-established vicinity range in the reply brief and that T-Mobile somehow misunderstood what that figure is about. That's not true at all. In fact, the patent itself refers to that circle in Figure 1. Excuse me. The patent itself refers to that signal in Figure 1 as the pre-established vicinity range, column 7, lines 4 through 10. Figure 1, the circle that's a specific distance, is referred to as the pre-established vicinity range. And it has to be a certain distance. Otherwise, the terms pre-established vicinity range don't make sense. In advance, we have to set a specific vicinity around the router as a parameter used to make the switching decisions. And the other point following up on questions that were asked, not only must there be a maximum distance determined, which cannot be here between the wireless device and the router, but that distance must be used in the switching conditions. As you pointed out, Judge Toronto, many things can be used in switching decisions, including the carriers, for example. But whatever the parameter is, it has to be used in the switching decision. Here, again, Your Honor, there is no dispute that the T-Mobile devices were incapable of determining distance, and that the distance that is pointed to, the distance in the test conditions for the signal, how far the signal can go, is never used itself as a parameter in making switching decisions. Is doctrine of equivalence not at issue? No. No, Your Honor. It is not. It is not. So the point that I'm making there, again, following up on the series of questions that have been asked, is that this notion that the routers have certain distance is not used to make switching decisions, and at best points out, as the district court did, that there is an inherent limit to how far signals can go. That's true of any system, and if that were all the claim element meant, then the last claim element would have no meaning whatsoever. We know that's not the case, of course, because it's an element, and also because of the way it was discussed during the prosecution. And once the claim element is given meaning, once it's understood to be a distance, then there is no dispute with respect to summary judgment, because Calypso has admitted, and in fact there is no dispute on this score, that T-Mobile's devices were incapable of measuring the distance, let alone using any kind of distance as a parameter in making a switching decision. Thank you, Mr. Crevett. Mr. Turing, you have about a minute left on rebuttal. Thank you. T-Mobile started its argument with essentially a point of novelty argument that would require the claims added during prosecution, and any elements added during that prosecution to have never existed in the prior art. That's not the issue here. We're looking at the combination of all these elements to provide that patentability. Well, that's not really what he said. What he said is that you actually added these limitations to overcome the prior art. Right, but it's the combination of all the elements together that allows for the claims to issue, not just one particular element. We can't take that one element by itself and get a claim just based on that. Well, that's true, but when you add an additional element, you narrow the scope of your claims, which means that you could change your claim from an invalidly broad claim to a valid claim. That is correct. And the district court, there was also discussion about how the phone and router must measure a distance between themselves. Again, at no point in the 923 patent specification or the claims requires or discloses or teaches how a phone would know, how a router would know, or how either of these devices would actually measure that distance, which would raise serious enablement issues if the district court's claim construction stands, as it does now. And one last point, T-Mobile raised the issue of the PICO net, which we discussed in our briefs and which is depicted in Figure 1 as Item 24, the circle around the two devices with the transceivers. And the actual claim, the specification talks about the pre-established vicinity range of the PICO net 24. That circle is not the pre-established vicinity range. That circle is the PICO net, which the patent defines at Column 5, lines 45 through 48, as two or more Bluetooth devices or equivalents sharing a common frequency channel. And that is the PICO net. Okay. Thank you, Mr. Jernan. I think we have your argument. We have to move on. Thank both counsel for their arguments today. The case is submitted. Thank you.